**Herman L. OSTROFF and E. Marion Ostroff, his wife, Intervenors, Appellants,**

**v.**

**BRANDYWINE LOCK & SAFE CO., Plaintiff, Appellee.**

Supreme Court of Delaware.

Submitted Feb. 13, 1981.

Decided Feb. 26, 1981.

Frederick T. Haase, Jr. (argued) of Roeberg & Associates, P.A., Wilmington, for intervenors-appellants.

Francis J. Trzuskowski and Robert K. Pearce (argued) of Trzuskowski, Kipp, Kelleher & Pearce, P.A., Wilmington, for plaintiff-appellee.

Before DUFFY, QUILLEN and HORSEY, JJ.

DUFFY, Justice:

This appeal involves the statutory procedure by which a judgment of the Court of Common Pleas is transferred to the Superior Court. We hold that the procedure followed in this case was not fatally defective but that an appropriate rule governing such a transfer is to be promulgated by the Court of Common Pleas.

I

The significant facts are few and undisputed. Brandywine Lock & Safe Co. (Brandywine) secured a judgment in the amount of $1,666. against one Donald F. Wilson in the Court of Common Pleas. One month later, Brandywine's counsel obtained a transcript of the proceedings from the Court of Common Pleas and filed it with the Prothonotary of the Superior Court in and for New Castle County. Upon that filing, the Prothonotary entered a judgment in favor of Brandywine against Wilson in the amount of $1,666., creating a lien on Wilson's real property in New Castle County. 10 *Del.C.* § 1317.

One year after judgment had been entered against Wilson in the Superior Court, Herman L. Ostroff and E. Marion Ostroff acquired title to real property in New Castle County which had been owned by Wilson and was subject to Brandywine's lien. At the time the Ostroffs acquired title, they knew that the lien was open of record. The Ostroffs then moved in the Superior Court to vacate Brandywine's judgment against Wilson on the ground that the judgment creditor had failed to make a motion in the Court of Common Pleas when it sought to transfer the judgment of that Court as required by § 1317(a).

The Superior Court held that in order to have standing to collaterally attack Brandy-

wine's judgment, the Ostroffs were obliged to show that the judgment was void on its face, and not merely "irregular." *Rhoads v. Mitchell*, Del.Super., 47 A.2d 174, 177 (1946); 1 *Freeman on Judgments* (5 ed.) § 261; 49 *C.J.S.* Judgments § 293. The Court determined that such showing had not been made and, therefore, the Ostroffs were without standing to be heard and so their petition for intervention was denied. The Ostroffs then docketed this appeal.

II

The transfer of a judgment of the Court of Common Pleas to the Superior Court is governed by 10 *Del.C.* § 1317, which reads as follows:

"(a) All civil judgments rendered by the Court [of Common Pleas] shall be entered in a judgment docket, which shall be properly indexed. The judgment shall not constitute a lien upon real estate, but a transcript thereof may be filed in the office of the Prothonotary of the Superior Court in and for the county wherein the judgment was rendered upon motion made in the Court by the judgment creditor in the judgment, and the Prothonotary shall enter in his judgment docket the names of the parties, the amount of the judgment, the name of the court in which the judgment was recovered, the time from which interest runs, and the amount of the costs, with the true date of such filing and entry. The judgment, so transferred, shall, from that date, become and be a lien on all the real estate of the debtor in the county in the same manner and as fully as judgments rendered in the Superior Court as liens, and may be executed and enforced in the same manner as judgments of the Superior Court. If any judgment is lawfully assigned to a joint debtor or surety, the assignee shall have the benefit of this section.

(b) Writs of execution for the seizure and sale of personal property based upon judgments obtained in the Court, shall be issued in the manner provided by law for writs issuing out of the Prothonotary's office in and for the respective counties

for the seizure and sale of personal property. The Court may, by rule of the Court made for that purpose, change the method of procedure."

We are unable to find a rule of the Court of Common Pleas or of the Superior Court specifying the procedure to be followed when such a judgment is transferred to the latter Court. During oral argument, counsel for the parties discussed the procedure generally followed by the Bar when such a transfer is made. While there may be some difference in the practice followed in the several Counties, it seems to be generally conceded (for present purposes) that counsel for the judgment creditor requests a transcript from the Court of Common Pleas, the transcript is delivered to him, the Clerk of the Court of Common Pleas notes in the docket that a transcript was so delivered, the attorney who receives the transcript then makes whatever arrangements are necessary with the Prothonotary for lodging of that transcript so that it will thereafter become a judgment in the Superior Court. Apparently, the Common Pleas record ends with a notation as to delivery of the transcript; a record is not made as to either the "transfer" of the judgment to the Superior Court or to any lodging or docketing of the transcript with the Prothonotary.

■ The attack made by the Ostroffs here, and in the Superior Court, centers on one point: § 1317(a) specifies that the transcript may be filed in the office of the Prothonotary upon "motion made" in the Court of Common Pleas. It is tacitly conceded that a motion, at least in the formal sense, was not filed in the Court of Common Pleas before the transcript was issued.

The Ostroffs admit that if such a motion had been filed in the Court of Common Pleas, the record of the Prothonotary would in no way be different from the present record. And we are unable to find, in the circumstances of this case, that a motion

made in the Court of Common Pleas would have added anything of significance either to the record or to the rights of the parties. It is true that the Statute does refer to a "motion," but under the circumstances, that is no more than an administrative formality. Otherwise stated, the absence of a "motion made" in the Court of Common Pleas for a transcript did not affect the jurisdiction of that Court over the parties, or the subject matter or the right of the parties to be heard. Thus the judgment of the Court of Common Pleas was not void on its face. *Restatement of Judgments* § 93 (1942); 46 *Am.Jur.2d* Judgments § 621.

It is conceded by appellants that the transcript was accurate in all respects and that the procedure followed by the Prothonotary complied with § 1317(a). In view of that, we conclude that the judgment entered in the Superior Court was not void on its face and thus the Superior Court properly denied the Ostroffs' motion to vacate it.*

### III

■ Although we have concluded that the order of the Superior Court in this case should be affirmed, it does not follow that the practice under § 1317(a) cannot or should not be improved. Indeed, it can and should be. When the provisions of § 1317(a) are followed, the effect is to "transfer" the judgment from the Court of Common Pleas to the Superior Court. The point is that the judgment rests in one Court or the other, but not in both. *McCoy v. Hickman*, Del.Super., 15 A.2d 427, 428–29 (1940). For that reason a statutory transfer of a judgment should be accomplished in a formal fashion by an inter-court transaction. Compare the practice for removal of an action from a Court which lacks subject matter jurisdiction, 10 *Del.C.* § 1902. Specifically, when an application is made to the Court of Common Pleas for a transcript (and it should be by written motion), an order should be entered directing issuance

---

* The Superior Court tested the Ostroffs' right to be heard by examining their substantive right to make a collateral attack on the judgment. In so doing, the Court considered both their right to be heard and the merits of the motion.

We have not written separately about "standing" because it seems to us that the Ostroffs, as the holders of legal title, have standing to seek a vacation of Brandywine's judgment lien on their property.

of the transcript and delivery thereof by the Clerk to the Prothonotary of the Court to which the judgment is transferred. An appropriate docket entry should then be made in the records of the Court of Common Pleas.

The Court of Common Pleas shall promptly promulgate a rule, uniform in all Counties, governing the practice under 10 *Del.C.* § 1317(a). The rule may include forms and/or standing directives to the Clerk which will minimize the paper work required to transfer the judgment from one Court to another.

Affirmed.